UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WOLFGANG WEISE, | |
| Plaintiff, | No. 24 Civ. Civ. 5760 (LJL) |
| v. | |
| U.S. DEPARTMENT OF STATE, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
## TO DISMISS THE COMPLAINT

MATTHEW PODOLSKY
Acting United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel:  (212) 637-0378
E-mail: leslie.ramirez-fisher@usdoj.gov

LESLIE A. RAMIREZ-FISHER
Assistant United States Attorney
– Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ..........................................................................................................................2

I.  The Repatriation Loan Program .........................................................................................2

II.  Restriction, Denial and Revocation of Passports under the Repatriation Loan Program ..........3

III.  Plaintiff's Passport, Repatriation Loan and Passport Application...........................................4

IV.  The Complaint and Subsequent Court Submissions by Plaintiff...............................................8

LEGAL STANDARDS .................................................................................................................9

I.  Summary Judgment .............................................................................................................9

II.  Lack of Jurisdiction...........................................................................................................12

III.  Failure to State a Claim.....................................................................................................12

ARGUMENT..............................................................................................................................13

POINT I—THE REVOCATION OF PLAINTIFF'S PASSPORT AND DENIAL OF
HIS APPLICATION FOR A NEW PASSPORT WITHSTANDS APA REVIEW......................13

I.  Revocation of Plaintiff's Passport Was Proper .......................................................................14

II.  Denial of Plaintiff's Request for  New Passport Was Proper ...................................................15

POINT II—PLAINTIFF'S CLAIM FOR MONEY DAMAGES MUST BE
DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION .......................................17

POINT III—PLAINTFF FAILS TO STATE A CLAIM FOR RELIEF UNDER
THE U.S. CONSTITUTION .......................................................................................................20

CONCLUSION...........................................................................................................................21

**TABLE OF AUTHORITIES**

Page(s)

Cases

*Adekoya v. Federal Bureau of Prisons*, ,
    No. 08 Civ. 14842009 WL 1835102 (S.D.N.Y. June 17, 2009) ............................................ 19
*Agosto v. Miller*,
     No. 16 Civ. 568, 2018 WL 1973157 (W.D.N.Y. Jan. 16, 2018)............................................ 16
*Alawamleh v. U.S. Dep't of State*,
    No. 10 Civ. 1494, 2010 WL 11600974 n.2 (N.D. Ga. Dec. 6...................................................... 3
*Almaklani v. Trump*,
    444 F. Supp. 425 (E.D.N.Y. 2020)........................................................................................ 16
*APWU v. Potter*,
    343 F.3d 619 (2d Cir. 2003).................................................................................................. 12
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................................... 13, 20
*Ass'n of Proprietary Colls. v. Duncan*,
    107 F. Supp. 3d 332 (S.D.N.Y. 2015)...................................................................................... 9
*Avyr Assocs., Inc. v. Meissner*,
    No. 95 Civ. 110729 (MBM), 1997 WL 188942 (S.D.N.Y. Apr. 18, 1997).............................. 11
*BDPCS, Inc. v. FCC*,
    351 F.3d 1177 (D.C. Cir. 2003) ............................................................................................ 11
*Bechtel v. Admin. Review Bd., U.S. Dep't of Labor*,
    710 F.3d 443 (2d Cir. 2013).................................................................................................. 11
*Bell Atl. Corp. v. Twombly*,
    550 U.S.  (2007) ............................................................................................................. 13, 20
*Bivens v. Six Unknown Fed. Narcotics Agents*,
    403 U.S. 388 (1971)................................................................................................... 1, 17, 18
*Celestine v. Mount Vernon Neighborhood Health Center*,
    403 F.3d 76 (2d Cir. 2005).................................................................................................... 19
*Citizens to Preserve Overton Park v. Volpe*,
    401 U.S. 402 (1971) .............................................................................................................. 10
*Cnty. of Westchester v. U.S. Dep't of Hous. & Urb. Dev.*,
    116 F. Supp. 3d 251 (S.D.N.Y. 2015)...................................................................................... 9
*Cors v. U.S.*,
    No. 12 Civ. 2265, 2013 WL 6816696 (S.D.N.Y. Dec. 26, 2013).............................................. 4
*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*,
    790 F.3d 411 (2d Cir. 2015)................................................................................................... 12
*DeMartino v. New York State Department of Taxation and Finance*,
    No. 22-720, 2023 WL 2563967 (2d Cir. Mar. 20, 2023)........................................................ 16
*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010).................................................................................................. 13
*FDIC v. Meyer*,
    510 U.S. 471 (1994) .............................................................................................................. 18
*Fiore v. Medina,* No. 11 Civ.  2264 (RJS),

2012 WL 4767143 (S.D.N.Y. Sept. 27, 2012)....................................................................... 19, 20

*Food and Drug Administration v. Wages and White Lion Investments*,
– S. Ct. –, 2025 WL 978101 (April 2, 2025) ................................................................ 11, 12, 14

*Glara Fashion, Inc. v. Holder*,
No. 11 Civ. 889 (PAE), 2012 WL 352309 (S.D.N.Y. Feb. 3, 2012) ...................................... 11

*Guadagno v. Wallack Ader Levithan Assoc.*,
932 F. Supp. 94 (S.D.N.Y. 1996), *aff'd* 125 F. 3d 844 (2d Cir. 1997)..................................... 12

*Hesse v. Godiva Chocalatier, Inc.*,
463 F. Supp. 3d 453 (S.D.N.Y. 2020)..................................................................................... 13

*In re Agent Orange*,
818 F.2d 210 (2d Cir. 1987)..................................................................................................... 19

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014)........................................................................................ 13

*Jarbie v. Holder*,
No. 15 Civ. 2565, 2016 WL 8711449 (S.D.N.Y. Aug. 12, 2016)
*report and recommendation adopted*, 2017 WL 111738 (S.D.N.Y. Jan. 11, 2017) ................ 14

*Just Bagels Mfg., Inc. v. Mayorkas*,
900 F. Supp. 2d 363 (S.D.N.Y. 2012)................................................................................. 4, 11

*Latif v. Obama*,
677 F.3d 1175 (D.C. Cir. 2011) ........................................................................................ 16, 17

*Luckett v. Bure*,
290 F.3d 493 (2d Cir. 2002)..................................................................................................... 12

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)............................................................................................... 12, 18

*Metro-North Commuter R.R. Co. v. U.S. Dep't of Labor*,
886 F.3d 97 (2d Cir. 2018)....................................................................................................... 11

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*,
463 U.S. 29 (1983) ................................................................................................................... 10

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ................................................................................................................. 20

*Natural Res. Def. Council v. EPA*,
658 F.3d 200 (2d Cir. 2011)..................................................................................................... 10

*Natural Res. Def. Council v. EPA*,
808 F.3d 556 (2d Cir. 2015)..................................................................................................... 10

*Noroozi v. Napolitano*,
905 F. Supp. 2d 535 (S.D.N.Y. 2012)...................................................................................... 10

*Page v. Oath, Inc.*,
No. 17 Civ. 6990, 2018 WL 1406622 (S.D.N.Y. Mar. 20, 2018)............................................ 20

*Pearl River Union Free Sch. Dist. v. Duncan*,
56 F. Supp. 3d 339 (S.D.N.Y. 2014)........................................................................................ 12

*Rivera v. USCIS*, No. 19 Civ. 3101,
2020 WL 4705220 (S.D.N.Y. Aug. 12, 2020) ......................................................................... 19

*Saleh v. Pompeo*,
393 F. Supp. 3d 172 (E.D.N.Y. 2019)...................................................................................... 14

*Schweiker v. Chilicky*,
487 U.S. 412 (1988) ................................................................................................................. 18

iii

*Selevan v. N.Y. Thruway Auth.*,
  584 F.3d 82 (2d Cir. 2009)................................................................................................... 13
*Shipping Fin. Servs. Corp. v. Drakos*,
  140 F.3d 129 (2d Cir. 1998).................................................................................................. 12
*State v. Dep't of Justice*,
  951 F.3d 84 (2d Cir. 2020).................................................................................................... 10
*Straw v. U.S. Dep't of State*,
  No. 19 Civ. 2294, 2020 WL 2490022 (D. Md. May 14, 2020) ................................................. 2
*Teleanu v. Koumans*,
  480 F. Supp. 3d 567 (S.D.N.Y. 2020)....................................................................................... 9
*Thomas v. Metro. Corr. Ctr.*,
  No. 09 Civ. 1769 (PGG), 2010 WL 2507041 (S.D.N.Y. June 21, 2010) ................................. 19
*U.S. Postal Serv. v. Gregory*,
  534 U.S. 1 (2001) .................................................................................................................. 16
*United States v. Chem. Found*,
  272 U.S. 1 (1926) .................................................................................................................. 16
*United States v. Mitchell*,
  445 U.S. 535 (1980) ............................................................................................................... 18
*United States v. Sherwood*,
  312 U.S. 584 (1941) ............................................................................................................... 18
*Univ. Med. Ctr. of S. Nevada v. Shalala*,
  173 F. 3d  (D.C. Cir. 1999), *aff'd* 802 F. 3d 413 (2d Cir. 2015) .............................................. 9
*Weinstein v. Albright*,
  261 F. 3d 127 (2d Cir. 2001)............................................................................................ 20, 21
*Wilkie v. Robbins*,
  551 U.S. 537 .......................................................................................................................... 18
*Ziglar v. Abbasi*,
  582 U.S. 120 (2017) ............................................................................................................... 18
*Zzyym v. Pompeo*,
  958 F.3d 1014 (10th Cir. 2020)................................................................................................ 4

Statutes

5 U.S.C. § 702................................................................................................................................ 13
5 U.S.C. § 706(2)(A)................................................................................................................. 10, 14
5 U.S.C. § 706(2)(E) ..................................................................................................................... 11
8 U.S.C. § 1361.............................................................................................................................. 11
8 U.S.C. § 1503(a) ......................................................................................................................... 14
22 U.S.C. § 2651.............................................................................................................................. 2
22 U.S.C. § 2671(a)(1)..................................................................................................................... 2
22 U.S.C. § 2671(b)(2)(B).............................................................................................................. 3, 4
22 U.S.C. § 2671(d)(4)-(11) ............................................................................................................. 3
28 U.S.C. § 2675(a) ....................................................................................................................... 19
28 U.S.C. §§ 1346(b), 2671-2680................................................................................................... 1, 19

Rules

Fed. R. Civ. P. 12(b)(6)............................................................................................ 1, 12, 13
Fed. R. Civ. P. 12(b)(1)................................................................................................ 1, 12
Fed. R. Civ. P. 12(h)(3)..................................................................................................... 12
Fed. R. Civ. P. 56.............................................................................................................. 1

Regulations

22 C.F.R. § 51.60............................................................................................................. 3
22 C.F.R. § 51.60(a)(1)............................................................................................. passim
22 C.F.R. § 51.60(c)(2)................................................................................... 4, 6, 14, 15
22 C.F.R. § 51.62(a)(1).................................................................................... 3, 15, 21

Defendant the United States Department of State ("State Department"), by its attorney Matthew Podolsky, Acting United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Fed. R. Civ. P. 56 on the revocation of Plaintiff's passport and the denial of his application for a new passport, and in support of its motion to dismiss for lack of jurisdiction over any claim being brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA"), or *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)), for money damages against the State Department pursuant to Fed. R. Civ. P. 12(b)(1), and to dismiss for failure to state a claim for relief under the U.S. Constitution pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff *pro se* commenced this action complaining of the State Department's refusal to grant his application for a passport.  In subsequent letters to the Court, he acknowledged that his prior passport had been revoked for failure to repay a repatriation loan.  Although when Plaintiff commenced this action the State Department had not yet denied his application for a passport, because Plaintiff failed to repay the loan, the State Department ultimately denied his application. Construing Plaintiff's submissions in light most favorable to him, this Court should grant summary judgment to the government on the revocation and denial decisions.  First, the State Department's revocation was proper because once it advanced a repatriation loan to Plaintiff and the loan had not been repaid, Plaintiff was no longer eligible to possess a full-validity passport.  Further, once the State Department commenced collection procedures, Plaintiff defaulted on the loan.  As a result, the denial of Plaintiff's passport application was also proper.  Furthermore, this Court lacks jurisdiction over any claim brought under the FTCA, as Plaintiff failed to plead, let alone prove, exhaustion of administrative remedies prior to filing suit, and the only named defendant in this

suit, the State Department, is immune from suit under the FTCA.  Likewise, the Court lacks

jurisdiction over any *Bivens* claim because the State Department is not the proper Defendant.  And

in any event, the revocation and denial decisions do not present the type of scenarios that could

warrant creation of a *Bivens* remedy.  Likewise, Plaintiff's constitutional challenge should be

denied, as Plaintiff merely invokes his Constitutional rights without asserting any basis for the

claim.  And in any event, Plaintiff was afforded all the Due Process he was entitled to under the

Fifth Amendment of the U.S. Constitution.  The State Department informed Plaintiff of his

obligation to repay the repatriation loan and of the consequences of failing to repay the loan in full,

and it notified him of the multiple procedures available to repay the loan.

**BACKGROUND**

**I.      The Repatriation Loan Program**

The State Department Basic Authorities Act of 1956, as amended, 22 U.S.C. § 2651,

*et seq.*, authorizes the Secretary of State (the "Secretary") "to make expenditures, from such

amounts as may be successfully appropriated therefor, for unforeseen emergencies arising in the

diplomatic and consular service."  22 U.S.C. § 2671(a)(1).  Under this statutory authority, the

Secretary may issue "loans . . . to destitute citizens of the United States who are outside the United

States . . . to provide for the return to the United States of its citizens."  *Id.* § 2671(b)(2)(B).  *See*

*Straw v. U.S. Dep't of State*, No. 19 Civ. 2294, 2020 WL 2490022, at *2-3 (D. Md. May 14, 2020)

(noting statutory authority of State Department to issue repatriation loans, and the administration

of the repatriation loan program under the State Department's Foreign Affairs Manual).

With regard to the repatriation loan program, the State Department shall, *inter alia*, bar

passports from being issued or renewed for individuals who are in default; report defaults to

commercial credit bureaus as provided in section 3711 of Title 31; be permitted to use any funds

2

necessary to contract with commercial collection agencies; charge interest, assess charges to cover the costs of processing and handling delinquent claims, and assess a penalty charge for failure to pay any portion of the debt more than 90 days past due. *See* 22 U.S.C. § 2671(d)(4)-(11); *see also Alawamleh v. U.S. Dep't of State*, No. 10 Civ. 1494, 2010 WL 11600974, at *1 n.2 (N.D. Ga. Dec. 6, 2010) (referencing action by State Department, as a creditor, to direct the Treasury Department to withhold the plaintiff's tax refund to offset amounts owed under a repatriation loan).

## II.    Restriction, Denial and Revocation of Passports under the Repatriation Loan Program

To assist the Department in its efforts to secure repayment of repatriation loans, passport services to recipients of such loans are limited. Foreign Affairs Manual ("FAM"), 7 FAM § 377(d). *See* https://fam.state.gov/FAM/07FAM/07FAM0370.html (last visited on April 7, 2025). Normally, at the time a repatriation loan is issued, the recipient's full-validity passport is stamped to reflect that the passport is valid only for direct return/transit to the United States by a specified date. *Id.*. Such U.S. passports are limited for direct return (meaning that the passport is valid only for transit to the United States) to facilitate the return to the United States of U.S. citizens who are otherwise ineligible to possess a full-validity passport, including under the repatriation loan program. 8 FAM §§ 1303.2-1, 1303.2-3(2). *See* https://fam.state.gov/FAM/08FAM/08FAM130302.html (last visited on April 7, 2025).

The recipient of a repatriation loan expressly agrees in the loan documentation that until they have paid their loan in full, they will only be eligible for a limited validity U.S. passport, and that if their loan is in default, they will not be eligible for a limited validity passport. CAR 12. The State Department "may revoke or limit a passport when . . . the bearer of the passport may be denied a passport under 22 C.F.R. § 51.60. . ." 22 C.F.R. § 51.62(a)(1). Section 51.60(c)(2) in turn provides that the State Department may refuse to issue a passport in any case in which the applicant

3

has not repaid a loan received from the United States under 22 U.S.C. § 2671(b)(2)(B) for repatriation. 22 C.F.R. § 51.60(c)(2). Thus, the Department may revoke a full-validity passport when the bearer has not repaid a repatriation loan.

Further, section 51.62(a)(1) provides that "[t]he [State] Department may not issue a passport, except a passport for direct return to the United States, in any case in which the Department determines or is informed by competent authority that . . . [t]he applicant is in default on a loan received from the United States under 22 U.S.C. § 2671(b)(2)(B) for repatriation of the applicant." 22 C.F.R. § 51.60(a)(1); *see Cors v. U.S.*, No. 12 Civ. 2265, 2013 WL 6816696, at *5-6 (S.D.N.Y. Dec. 26, 2013), *report and recommendation adopted*, No. 12 Civ. 2265, Dkt. No. 37 (S.D.N.Y. Feb. 5, 2014) (rejecting the plaintiff's claim that the State Department improperly denied his passport application for failure to repay repatriation loan); *see also Zzyym v. Pompeo*, 958 F.3d 1014, 1025 (10th Cir. 2020) (noting, among other reasons, State Department may deny passport for default on a federal loan (citing 22 C.F.R. § 51.60(a)(1)).

## III.     Plaintiff's Passport, Repatriation Loan, and Passport Application

In August 2016, Plaintiff, a naturalized U.S. citizen, received U.S. Passport (No. 550951785) under his former name, Valery Katsnelson. CAR 31; CAR 7-8 (passport application), CAR 9 (U.S. naturalization certificate).[1]

---

[1] Citations to the administrative record refer to the page numbers marked at the bottom-right of each document. The government has not filed a statement of undisputed facts pursuant to Local Civil Rule 56.1 in support of its cross-motion for summary judgment because Plaintiff's case against the government concerning his passport application is properly construed as one being brought pursuant to the APA challenging final agency action, and the only material facts the Court can consider are contained in the administrative record. *See* Local Civ. R. 56.1(a) ("This rule does not apply to claims brought under the Administrative Procedure Act."); *see also Just Bagels Mfg., Inc. v. Mayorkas*, 900 F. Supp. 2d 363, 372 n. 7 (S.D.N.Y. 2012) (cases based on review of the administrative record "present[] only a question of law" and directing the parties not to submit Local Rule 56.1 statements).

On December 27, 2022, Plaintiff, who was in Minsk, Belarus, signed for a Repatriation/Emergency Medical and Dietary Assistance Loan Application ("Repatriation Loan Application"). CAR 11-13; *see* CAR 19 (recording circumstances under which Plaintiff sought repatriation loan). Plaintiff signed the Repatriation Loan Application, promising to repay the U.S. Government within 30 days of initial billing, and acknowledging that until he paid the loan in full, he would be eligible for only a limited validity U.S. passport for direct return to the United States. CAR 12.

A U.S. consular officer in the U.S. Embassy in Vilnius, Lithuania approved the loan in the amount of $6,000.00. CAR 13. Of the total approved, $5,951.17 was expended as follows: travel of Plaintiff and an escort from Minsk to Istanbul and onward from Istanbul to Newark ($4,366.17), immigration fine ($150.00), two nights of lodging for Plaintiff and the escort ($318.00), meals and incidental expenses ($276.50), and escort fee ($725.50). CAR 19; *see* CAR 14 (electronic ticket receipts). Although Plaintiff was eligible for only a limited validity passport, the Vilnius consular officer handling the case was unable to stamp Plaintiff's full-validity passport because the U.S. Embassy in Minsk had suspended operations on February 28, 2022, and at the time of Plaintiff's scheduled departure, the consular officer lacked a valid diplomatic visa that would have allowed him to enter Belarus and limit the full-validity passport then in Plaintiff's possession. CAR 19.

On May 11, 2023, with his repatriation loan unpaid, Plaintiff was ineligible to possess a full-validity passport, and the State Department revoked his 2016 full-validity passport, which the consular officer had been unable to limit prior to Plaintiff's departure from Belarus. In its notice letter, the State Department erroneously stated that the reason for the revocation was that Plaintiff was "in default" on his repatriation loan, erroneously citing 22 C.F.R. § 51.60(a)(1). CAR 21. At the time of revocation, Plaintiff was not yet in default on his repatriation loan. Nonetheless, he

5

was not entitled to possess a full-validity passport at that time consistent with the terms of the Repatriation Loan Agreement and the applicable State Department regulations (22 C.F.R. §§ 51.60(c)(2) (passport denial for nonpayment of repatriation loan) and 51.62(a)(1) (revocation authorized under such circumstances).

By order of the Civil Court of the City of New York, on August 21, 2023, Plaintiff changed his name to Wolfgang Weise.  CAR 33.

On September 27, 2023, the State Department issued a bill to Plaintiff at his verified US billing address in Baltimore, Maryland.  CAR 23-24; *see* CAR 19 (noting verified billing address). On October 30, and November 29, 2023, the State Department sent notices of delinquency to Plaintiff at that same address in Baltimore, Maryland.  CAR 26-27.

On December 21, 2023, Plaintiff, under his current name Wolfgang Weise, submitted an application for a full-validity passport to the U.S. Post Office Grand Central Station, in New York, New York.  CAR 28.  He gave a mailing address in New York City.  CAR 28.  He acknowledged his former name and his prior passport (number 550951785).  CAR 28.  Even though that passport had been revoked, Plaintiff claimed under penalty of perjury that he had lost it five to six months earlier,  CAR 30, which coincides with the timeframe that the May 11, 2023, notice revoking his passport, CAR 21.

On January 3, 2024, a State Department Loan Status Query indicated that Plaintiff had a loan balance of $6,011.09 and had not made any payments.  CAR 52.

On January 5, 2024, the State Department wrote to Plaintiff indicating that his passport application could not be processed because he owed a balance on an existing repatriation loan. CAR 53.  The letter provided instructions for multiple methods available to Plaintiff for arranging for the repayment of his loan.  CAR 53.

Although he had reported his revoked passport lost six months earlier, on June 28, 2024, Plaintiff attempted to use it to board an international flight at Dulles International Airport, where it was confiscated by U.S. Customs and Border Protection.  Dkt. No. 5 at 3-7.

On July 2, 2024, Plaintiff submitted a change of address to the State Department, and on July 3, 2024, the State Department resent its previous letter to Plaintiff at the new address provided in Washington, DC, providing another 90 days for him to arrange repayment of his repatriation loan.  CAR 55-57.  On July 20, 2024, Plaintiff submitted another change of address to the State Department, and on August 9, 2024, the State Department resent the letter to Plaintiff at the new address provided in New York, NY, providing yet another 90 days for him to arrange for repayment of his repatriation loan.  CAR 58-60.  In each of its letters concerning Plaintiff's pending passport application, the State Department indicated that the application would be denied if he failed to make arrangements for repayment within 90 days.  CAR 53, 56, 59.

On October 9, 2024, Plaintiff wrote to the State Department denying he used a repatriation loan and claiming that he had been "deported" from Belarus; that the money was "stolen by the Department [of State] from [the] U.S. Treasury"; that this was part of a "special operation of [Belarussian] KGB"; that he "used only money for deportation from Internal Ministry of Belarus"; that a former employee of the State Department who "originated this mess on me" "will be deported from U.S.," threatening to "personally take care of Deportation of your black employee who handled this situation . . . after she take a jail time for stealing money," among other threats and vitriol; and he continued to request a new passport.  CAR 61.

On October 18, 2024, the State Department denied Plaintiff's application for a full-validity passport.  CAR 64.  The denial letter explained that prior correspondence dated January 5, July 3, and August 9, 2024, had been sent to Plaintiff regarding his ineligibility for a full-validity passport

because he was in default on an existing repatriation loan.  CAR 64.  Because Plaintiff was not able to resolve this issue within the timeframe established in the prior correspondence, his application for a passport was denied.  CAR 64.

## IV.    The Complaint and Subsequent Court Submissions by Plaintiff

On July 24, 2024, Plaintiff commenced this action against the State Department for alleged violations of his "legal, Constitutional and civil" rights to use his passport as a citizen of the United States.  Complaint ("Compl."). Dkt. No. 1.  Plaintiff asserted that he has not received the new passport that he applied for, in his new name, Wolfgang Weise. Compl. He alleges that as pretext for not mailing the passport to him, the State Department asked him to answer some questions. Compl.  Plaintiff alleges damage to his reputation and psychological trauma, for which he seeks an award of "$500,000 up to $1,000,000 in U.S. currency."  Compl.  In subsequent correspondence filed with the Court, he requests 3 million U.S. dollars.  Dkt. No. 14, p. 5.

After commencing this action, Plaintiff continued to submit correspondence to this Court complaining about the non-issuance of a U.S. passport to him, and other matters.  *See* Dkt. Nos. 5, 7-10, 14, 31. On September 3, 2024, Plaintiff acknowledged that when attempting to travel to Germany on June 28, 2024, a customs official confiscated his passport. Dkt. No. 5, pp. 3-7.

On October 15, 2024, Plaintiff acknowledged receipt of the State Department's August 9, 2024, letter refusing to issue a passport to him—though he characterized the letter as an attempt to extort money from him.  Dkt. No. 8, p. 1-2, *see id.*, p. 7 (copy of State Department's August 9, 2024, letter denying Plaintiff's application for a full-validity passport).  In this letter, Plaintiff again denied he had applied for and received a repatriation loan. *Id.* p.2.  Yet, he acknowledged that in 2022, he was in Minsk when all his money was stolen and he was offered a repatriation loan by a consular officer; and that with an escort, he boarded a plane to Istanbul, and then to Newark

8

Airport. *Id.* at 3-5. Plaintiff appears to contend, however, that it was a "KGB" agent who escorted him back to the United States, and the "KGB" that paid for the trip. *Id.* 3-5; *see* Dkt. No. 14, p.3 (claiming that "Internal Ministry of Belarus Republic" paid for his ticket back to the U.S.).

On October 23, 2024, and November 18, 2024, Plaintiff complained about the State Department's referral of the repatriation loan debt to the Department of Treasury for collection and the subsequent offset withholding of up to 15% of his Social Security benefits. Dkt. No. 9, 11. Beginning in June 2024, Treasury's Bureau of the Fiscal Service began withholding amounts from Plaintiff's monthly Social Security benefits. Dkt. 9 at 3.

On December 4, 2024, Plaintiff acknowledged receipt of correspondence from the State Department, informing him that if he did not make payment to the State Department, they would "destroy" his new passport and return his Certificate of Naturalization. Dkt. 14, p.4. Plaintiff confirmed that the State Department "burned" his new passport and mailed back his Certificate of Naturalization, which he had submitted with his January 8, 2024, passport application. *Id.*

## LEGAL STANDARDS

### I.    Summary Judgment

"When a court is called upon to review agency action under the [APA], the question presented 'is a legal one which the district court can resolve on the agency record . . . on a motion for summary judgment.'" *Cnty. of Westchester v. U.S. Dep't of Hous. & Urb. Dev.*, 116 F. Supp. 3d 251, 275 (S.D.N.Y. 2015) (quoting *Univ. Med. Ctr. of S. Nevada v. Shalala*, 173 F. 3d 440, n.3 (D.C. Cir. 1999)), *aff'd*, 802 F. 3d 413 (2d Cir. 2015); *accord Teleanu v. Koumans*, 480 F. Supp. 3d 567, 575-76 (S.D.N.Y. 2020) (citing, *inter alia*, *Ass'n of Proprietary Colls. v. Duncan*, 107 F. Supp. 3d 332, 344 (S.D.N.Y. 2015) ("where a party seeks review of agency action under the APA, the district court sits as an appellate tribunal, and the entire case on review is a question of

9

law" (internal quotation marks omitted)); *Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012) (summary judgment is appropriate in APA cases because "the question [of] whether an agency's decision is arbitrary and capricious . . . is a legal issue amenable to summary disposition" (internal quotation marks omitted))).

Under the APA, a reviewing court will not set aside agency action unless it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).  A decision is arbitrary or capricious "'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Natural Res. Def. Council v. EPA*, 658 F.3d 200, 215 (2d Cir. 2011) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43 (1983)). The Court must uphold the challenged decision if it is "satisfied from the record that the agency examined the relevant data and articulated a satisfactory explanation for its action." *Natural Res. Def. Council v. EPA*, 808 F.3d 556, 569 (2d Cir. 2015) (internal quotation marks and alterations omitted). The "scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43. "While agency action may be overturned as arbitrary and capricious if the agency entirely failed to consider an important aspect of the problem at issue, a court will not lightly reach that conclusion." *State v. Dep't of Justice*, 951 F.3d 84, 122 (2d Cir. 2020) (internal quotation marks and citations omitted). Review under the APA looks to "the full administrative record that was before the [decisionmaker] at the time [of the] decision" to ensure that the decision "was based on a consideration of the relevant factors" and that the decision was not a "clear error." *Citizens to Preserve Overton Park*

*v. Volpe*, 401 U.S. 402, 416, 420 (1971). When an agency offers multiple grounds for a decision, the Court ordinarily must affirm the agency as long as any one of the grounds is valid. *See BDPCS, Inc. v. FCC*, 351 F.3d 1177, 1183 (D.C. Cir. 2003).

The APA permits a court to "set aside agency action, findings, and conclusions" when they are "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E); *Bechtel v. Admin. Review Bd., U.S. Dep't of Labor*, 710 F.3d 443, 445-46 (2d Cir. 2013). "Substantial evidence is more than a scintilla, but less than a preponderance." *Metro-North Commuter R.R. Co. v. U.S. Dep't of Labor*, 886 F.3d 97, 106 (2d Cir. 2018). "It is evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "The mere possibility of drawing two inconsistent conclusions from the evidence does not render an agency's finding unsupported by substantial evidence." *Id.* (internal quotation marks omitted). In light of a visa petitioner's burden to establish eligibility for a visa under 8 U.S.C. § 1361, a "failure to adduce evidence can itself constitute the 'substantial evidence' necessary to support the agency's challenged decision." *Just Bagels Mfg., Inc.*, 900 F. Supp. 2d at 373 (quoting *Glara Fashion, Inc. v. Holder*, No. 11 Civ. 889 (PAE), 2012 WL 352309, at *6 (S.D.N.Y. Feb. 3, 2012)); *see also Avyr Assocs., Inc. v. Meissner*, No. 95 Civ. 110729 (MBM), 1997 WL 188942, at *1 (S.D.N.Y. Apr. 18, 1997) (plaintiff challenging denial of visa petition bears "a heavy burden").

In *Food and Drug Administration v. Wages and White Lion Investments*, – S. Ct. –, 2025 WL 978101 (April 2, 2025), the Supreme Court recently addressed the question of harmless error in administrative decision subject to challenge under the APA.  The Supreme Court observed that it has long been accepted that a remand may not be necessary when an agency's decision is supported by a plethora of factual findings, only one of which is unsound. *Id.* at *24.  Further, the

11

Court noted that "[w]hen it is clear that the agency's error 'had no bearing on the procedure used or the substance of [the] decision reached,' a remand would be pointless." *Id.* (citations omitted).

## II.    Lack of Jurisdiction

"'A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). It is the plaintiff's burden to establish that subject matter jurisdiction exists. *Luckett*, 290 F.3d at 497. "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *accord APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003). Where a defendant makes a factual attack on the court's jurisdiction to hear a plaintiff's claims, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations; rather the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Guadagno v. Wallack Ader Levithan Assoc.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996), *aff'd* 125 F.3d 844 (2d Cir. 1997) (citations omitted). When "deciding a Rule 12(b)(1) motion, the court may also rely on evidence outside the complaint." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015).

## III.    Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) should be granted when the complaint fails to allege all the required elements of a cause of action. *See Pearl River Union Free Sch. Dist. v. Duncan*, 56 F.

Supp. 3d 339, 351 (S.D.N.Y. 2014); *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 562 (S.D.N.Y. 2014) (granting a motion to dismiss under Rule 12(b)(6) where the defendant argued that the complaint "fail[ed] to adequately allege the key element of a . . . cause of action"). A court must "assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Allegations that are "no more than conclusions [] are not entitled to the assumption of truth," and " 'naked assertion[s]' devoid of 'further factual enhancement'" or "the-defendant-unlawfully-harmed-me accusation[s]" are not sufficient to show a petitioner is entitled to relief. *Iqbal*, 556 U.S. at 678-79 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 557 (2007). Nor must a court accept as true "legal conclusions" or "'a legal conclusion couched as a factual allegation.'" *Id.* at 678. In ruling on a Rule 12(b)(6) motion to dismiss, a court may consider (among other things) documents incorporated by reference or integral to the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Judicial notice may be taken "of information publicly announced on a party's website, as long as website authenticity is not in dispute and it is capable of accurate and ready determination." *Hesse v. Godiva Chocalatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) (quotation marks and citations omitted). The information contained in the certified administrative record is integral to the complaint, as Plaintiff's submissions to the Court refer to and respond to this information.

## ARGUMENT

### POINT I—THE REVOCATION OF PLAINTIFF'S PASSPORT AND DENIAL OF HIS APPLICATION FOR A NEW PASSPORT WITHSTANDS APA REVIEW

The APA provides that "[a] person suffering legal wrong because of agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702.  Under the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse

13

of discretion, or otherwise not in accordance with law." 5 U.S.C. 706(2)(A).   Plaintiff did not invoke the APA in his *pro se* pleadings; however, assuming for the purpose of this motion that Plaintiff's intent is to challenge his passport revocation and/or the denial of a new passport, APA review is available here. *See Saleh v. Pompeo*, 393 F. Supp. 3d 172, 181 (E.D.N.Y. 2019) (APA review available because no adequate alternative for judicial review of State Department revocation of passport that is not based on 8 U.S.C. § 1503(a) covering denial of right or privilege on grounds that individual is not a national of the United States); *see, e.g.*, *Jarbie v. Holder*, No. 15 Civ. 2565, 2016 WL 8711449, at *4 (S.D.N.Y. Aug. 12, 2016) (APA review applied to State Department's denial of passport due to failure to establish identity), *report and recommendation adopted*, 2017 WL 111738 (S.D.N.Y. Jan. 11, 2017).   This Court should grant summary judgment in favor of Defendant because the State Department's decisions to revoke Plaintiff's passport and deny his application for a new passport are not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

## I.      Revocation of Plaintiff's Passport Was Proper[2]

Consistent with Department regulations, Plaintiff was not entitled to the full-validity passport in his possession after the repatriation loan was issued and he returned to the United States. [3] *See* 22 C.F.R. §§ 51.60(c)(2) and 51.62(a)(1); 7 FAM § 377(d); 8 FAM 1303.2-3(2).

---

[2] *See infra* Point II establishing the *bona fides* of the underlying loan and Plaintiff's failure to make any payments on the loan.

[3] With respect to the May 11, 2023, decision to revoke Plaintiff's passport, the government acknowledges that the stated reason, that Plaintiff was "in default" on the repatriation loan, was incorrect, CAR 21, because the State Department had not yet commenced efforts to collect the loan, *see* CAR 23-24 (September 27, 2023 bill for repayment of repatriation loan).  Even if this Court were to conclude that the notice of revocation was therefore issued in error, that error would be harmless because "it is clear that the agency's error had no bearing on the procedure used or the substance of the decision reached." *Food and Drug Administration*, 2025 WL 978101, at *24. Here, the Department had the authority to revoke the passport consistent with two interrelated

14

Plaintiff was fully aware of his ineligibility because when he signed the loan agreement, he expressly acknowledged that he was eligible for only a limited validity passport for direct return to the United States. CAR 12. Indeed, the only reason Plaintiff had physical possession of a full-validity passport was because it could not be properly stamped for limited use due to the suspended operations at the Minsk Embassy and inability of a consular officer to enter Belarus at the time of Plaintiff's release from detention. CAR 19. Moreover, it is undisputed that Plaintiff had not made any efforts to repay the loan. CAR 52 (January 2024 State Department Query reflecting no loan payments). The Department's revocation of the full-validity passport was therefore proper given plaintiff's outstanding repatriation loan.

## II. Denial of Plaintiff's Request for a New Passport Was Proper

After this action was commenced, but in a matter that Plaintiff did complain of within ongoing correspondence to the Court (Dkt. Nos. 5, 7-10, 14, 31), on October 18, 2024, the State Department denied Plaintiff's application for a new passport because he had still not repaid the repatriation loan.[4] CAR 64. If the court is inclined to address the merits of the denial, summary judgment should be granted to the government because it is supported by the record and in full compliance with applicable law. Plaintiff's fantastic theories to the contrary do not alter that conclusion.

First, there is no doubt of the basis of the denial. The existence of the repatriation loan is evidenced by Plaintiff's Repatriation Loan Application that Plaintiff signed acknowledging his

---

subsections of its regulations: 22 C.F.R. § 51.62(a)(1), which was cited in the notice of revocation, CAR 21, and 22 C.F.R. § 51.60(c)(2), which was not.

[4] Prior to the date Plaintiff commenced this action, on January 4, 2024, the State Department refused to process the application for essentially for the same reason (CAR 53), but the State Department did not deny the application until October 2024, after Plaintiff continued to refuse to repay the loan (CAR 64).

obligation to repay the loan.  CAR 11-12.  Further, Plaintiff's use of the loan proceeds is evidenced by State Department records reflecting the disbursement of the loan proceeds including air fare, lodging and incidental expenses for Plaintiff's return to the United States, and appropriate fine and fees.  CAR 19.  Plaintiff's failure to pay the loan is likewise evidenced by State Department loan status query reflecting an outstanding loan balance of $6,011.09.  CAR 52.

"Once an agency presents a certified copy of the complete administrative record, the court presumes that the record is properly designated." *Almaklani v. Trump*, 444 F. Supp. 425, 431 (E.D.N.Y. 2020) (internal quotation marks and citations omitted).  "Absent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity, that it properly designated the administrative record." *Id.* (internal quotation marks and citations omitted).  To overcome this presumption, a plaintiff must make a "strong showing of bad faith or improper behavior by the agency." *Id.* (cleaned up and citations omitted).

Furthermore, the Government is entitled to a presumption of regularity and good faith in its decisions. *See U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001).  The "presumption of regularity attaches to the actions of Government agencies." *DeMartino v. New York State Department of Taxation and Finance*, No. 22-720, 2023 WL 2563967 (2d Cir. Mar. 20, 2023); *see United States v. Chem. Found*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers, and in the absence, of clear evidence to the contrary, courts presume that they have properly discharged their official duties."). "The presumption applies to government-produced documents no less than to other official acts." *Latif v. Obama*, 677 F.3d 1175, 1178 (D.C. Cir. 2011); *see e.g.*, *Agosto v. Miller*, No. 16 Civ. 568, 2018 WL 1973157, at *5 (W.D.N.Y. Jan. 16, 2018) ("Other than his self-serving and conclusory allegations, petitioner fails to present any evidence to substantiate [claim that court officials used forged documents or used

16

records of a different individual with the same name to prove prior convictions], or to otherwise rebut the presumption of regularity that attaches to documents produced by public officers.") (citing *Latif*, 666 F.3d at 748)).

Thus, the government is entitled to the presumption, based on Agency records, that the repatriation loan was issued, disbursed in accordance with its stated purpose of repatriating Plaintiff to the United States, and that Plaintiff has not repaid the loan. Plaintiff's complaint fails to even recognize the existence of the loan and the signed loan application, and it therefore fails to rebut the presumption of the *bona fides* of the basis of State Department's decision to deny his application for a new passport. And even though in subsequent correspondence to the Court, Plaintiff denied that he ever used a repatriation loan, his mere self-serving and conclusory allegations (Dkt. Nos. 8, 14), are not sufficient to overcome the presumption of regularity attached to the documents produced by public officers, reflecting the loan and Plaintiff's non-payment, and surely do not amount to a strong showing of bad faith or improper behavior by the agency.

Thus, consistent with 22 C.F.R. § 51.60(a)(1), the State Department properly denied Plaintiff's application for a new passport.

## POINT II—PLAINTIFF'S CLAIM FOR MONEY DAMAGES MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

In the complaint, and in at least one letter to the Court, Plaintiff asks for an award of money damages against the State Department without citing authority under which the Court could grant such relief. Comp. and Dkt. No. 14. To the extent this Court construes the claim as one under the FTCA, or under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), it must be dismissed for lack of jurisdiction.

"The United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain that

17

suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  Because the doctrine of sovereign immunity is jurisdictional in nature, in order to prevail, the plaintiff bears the burden of proving his claim falls within an applicable waiver.  *See Makarova v. U.S.*, 201 F. 3d 110, 113 (2d Cir. 2000).  Sovereign immunity precludes suits against the United States and its agencies.  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").

Any *Bivens* claims must be dismissed.  First, *Bivens*, which held that an individual injured by a federal agent's alleged violation of the Fourth Amendment may bring an action for damages against the agent, does not lie against a federal agency.  *Meyer*, 510 U.S. at 486.  As the State Department is the only named Defendant, any *Bivens* claim must be dismissed.

In any event, Plaintiff's complaint does not raise the type of scenario that could warrant a *Bivens* relief, even had he properly named an individual Federal employee or employees.    In *Bivens*, the Supreme Court recognized a cause of action for damages against individual federal agents for violation of a plaintiff's Fourth Amendment rights.  *Bivens*, 403 U.S. at 397.  Since *Bivens*, the Supreme Court recognized causes of action under the Fifth and Eighth Amendments.  *See Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017).  However, beyond these categories, the Supreme Court disfavors expanding the *Bivens* remedy.  *Id.* at 135.  And in particular, the Court has declined to create implied damages remedy in a procedural due process claim against Social Security officials or against officials from the Bureau of Land Management. *Id.* (citing *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988) and *Wilkie v. Robbins*, 551 U.S. 537, 547-48).  Likewise here, the revocation of Plaintiff's passport and denial of his application for a new passport, where the underlying basis of the decision are clear—his failure to repay a repatriation loan—clearly

18

would not warrant *Bivens* relief. *See e.g.*, *Rivera v. USCIS*, No. 19 Civ. 3101, 2020 WL 4705220, at * 15 (S.D.N.Y. Aug. 12, 2020) (special factors counseled against extending a *Bivens* remedy to plaintiff's claims that his due process rights were violated by denial of immigration benefit where the plaintiff had alternate remedy, including a tort claim; it did not matter whether the alternate remedy would succeed).

To the extent the Court construes Plaintiff's claim as one brought under the FTCA, that statute waives the government's sovereign immunity only for:

> claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Further, the FTCA expressly provides that a tort claim against the United States for money damages "shall not be instituted" without prior exhaustion of administrative remedies. 28 U.S.C. § 2675(a). Thus, under the statute, "[e]xhaustion of administrative remedies is a prerequisite to suit in federal court." *Adekoya v. Federal Bureau of Prisons*, No. 08 Civ. 1484, 2009 WL 1835102, at *2 (S.D.N.Y. June 17, 2009) (internal quotation marks and citations omitted). The exhaustion requirement is jurisdictional and cannot be waived. *Celestine v. Mount Vernon Neighborhood Health Center*, 403 F.3d 76, 82 (2d Cir. 2005). Further, a plaintiff asserting an FTCA claim not only has the burden to prove exhaustion, but also to plead it affirmatively in his complaint. *See Fiore v. Medina,* No. 11 Civ. 2264 (RJS), 2012 WL 4767143, at *6-7 (S.D.N.Y. Sept. 27, 2012) (citing *In re Agent Orange,* 818 F.2d 210, 214 (2d Cir. 1987)); *see also Thomas v. Metro. Corr. Ctr.,* No. 09 Civ. 1769 (PGG), 2010 WL 2507041, at *5-7 (S.D.N.Y. June 21, 2010)).

Here, Plaintiff has failed to plead exhaustion under the FTCA, let alone that he has initiated the administrative claims process. Accordingly, this Court should dismiss for lack of jurisdiction, any claim construed to be one under the FTCA. *Fiore*, 2012 WL 4767143, at *7. In any event, "[a] federal agency is not a proper defendant under the FTCA; only the United States can be sued for claims within the law's scope." *Page v. Oath, Inc.*, No. 17 Civ. 6990, 2018 WL 1406622, at *3 (S.D.N.Y. Mar. 20, 2018), *aff'd sub nom*, 797 F. App'x 550 (2d Cir. 2019). Accordingly, this matter must be dismissed as the State Department, the only named defendant, is immune from suit. *Id.*

**POINT III—PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF UNDER THE U.S. CONSTITUTION**

As an initial matter, Plaintiff's mere invocation of the U.S. Constitution is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678-79 (Allegations that are "no more than conclusions [] are not entitled to the assumption of truth," and " 'naked assertion[s]' devoid of 'further factual enhancement'" or "the-defendant-unlawfully-harmed-me accusation[s]" are not sufficient to show a petitioner is entitled to relief. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 557 (2007)).

To the extent that Plaintiff's challenge is construed as a Due Process claim under the Fifth Amendment of the U.S. Constitution, it must nevertheless be dismissed. A plaintiff's right to travel, which is restricted by the revocation of his passport and denial of an application for a new passport, is a protected liberty interest. *See Weinstein v. Albright*, 261 F. 3d 127, 135 (2d Cir. 2001). The due process interest requires that the government provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted). And here, the State Department has

20

afforded Plaintiff due process under this standard.  As noted, even though the notice of revocation cited an erroneous reason ("default") and subsection of State Department regulations (22 C.F.R. § 51.60(a)(1)), Plaintiff was on notice from December 27, 2022 (the date that he signed the Repatriation Loan Application), of his ineligibility to possess a full-validity passport until the repatriation loan was paid in full and revocation of Plaintiff's 2016 passport was justified under State Department regulations (22 C.F.R. §§ 51.62(a)(1) and 51.60(c)(2)).  Further, the State Department sent to Plaintiff no less than three letters informing him of his obligation to repay the loan before his application for a new passport could be processed.  Thus, Plaintiff had sufficient notice and opportunity to repay the repatriation loan, which is sufficient to protect his liberty interest in having a passport and travel internationally.  *See Weinstein*, 261 F. 3d at 139 (the right to notice and opportunity to contest the arrears (leading to the revocation of passport and denial of new passport), was sufficient to protect liberty interest in having a passport and traveling internationally). There is simply no merit to any due process violation that Plaintiff could be claiming.

## CONCLUSION

For the foregoing reasons, the Court should grant the government's motion for summary judgment and the motions to dismiss for lack of jurisdiction and failure to state a claim.

Dated: New York, New York
     April 10, 2025

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney for the
Southern District of New York,
*Attorney for Defendant*

By:    /s/ Leslie A. Ramirez-Fisher
      LESLIE A. RAMIREZ-FISHER
      Assistant United States Attorney

21

86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-0378
Email: leslie.ramirez-fisher@usdoj.gov

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 7,047 words.

22