**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WOLFGANG WEISE,

Plaintiff,

vs.

U.S. DEPARTMENT OF STATE,

Defendant.

**No. 24-cv-5760 (LJL)**
No. 26-cv-4422 (LJL) [related]

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ... i
TABLE OF AUTHORITIES ... ii
INTRODUCTION ... 1
ARGUMENT ... 1
I. Record-Related Arguments ... 1
A. Scope of Review ... 1
B. Presumption of Regularity ... 4
II. The Department Abandoned Plaintiff's Revocation Arguments ... 4
III. The Department's Default Determination ... 5
A. The Department Now Defends the Denial on Reasons It Never Gave, and the Record Still Does Not Establish a Valid Demand ... 5
B. Even Assuming a Valid Contract, Every Notice That Mattered Went to the Wrong Address ... 6
IV. Due Process/Regulatory Arguments ... 8
A. The Unexplained Switch from § 51.60(c)(2) to § 51.60(a)(1) ... 8
B. *Accardi* and Due Process ... 9
CONCLUSION ... 10
CERTIFICATE OF COMPLIANCE ... 11

# TABLE OF AUTHORITIES

**Cases**

*Authors Guild v. Nat'l Endowment for the Humanities*,
No. 25-CV-3657 (CM), 2025 WL 3678097 (S.D.N.Y. Dec. 18, 2025) .................................. 3, 4

*Calvary Hosp., Inc. v. Becerra*,
762 F. Supp. 3d 360 (S.D.N.Y. 2025)......................................................................................... 2

*Cameron v. Garland*,
2026 WL 1707077 (S.D.N.Y. June 12, 2026) ............................................................................. 3

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020)......................................................................................................................... 5

*Est. of Landers v. Leavitt*,
545 F.3d 98 (2d Cir. 2008)........................................................................................................... 2

*Gonzalez v. Inn on the Hudson LLC*,
No. 20-CV-9196 (EJ), 2022 WL 974384 (S.D.N.Y. Mar. 30, 2022) .......................................... 2

*Hadwan v. U.S. Dep't of State*,
139 F.4th 209 (2d Cir. 2025) ................................................................................................... 5, 6

*Hizam v. Clinton*,
2012 WL 4220498 (S.D.N.Y. Sept. 20, 2012)......................................................................... 9, 10

*Hoffenberg v. C.I.R.*,
905 F.2d 665 (2d Cir. 1990)......................................................................................................... 7

*Jones v. Flowers*,
547 U.S. 220 (2006)................................................................................................................. 6, 7

*Khalil v. Joyce*,
771 F. Supp. 3d 268 (S.D.N.Y. 2025)......................................................................................... 4

*Lindsay v. New York Child Support OCSS*,
No. 25-CV-2232 (LLS), 2026 WL 962464 (S.D.N.Y. Apr. 8, 2026).......................................... 6

*Luessenhop v. Clinton Cnty., N.Y.*,
466 F.3d 259 (2d Cir. 2006)......................................................................................................... 7

*Metro. Transportation Auth. v. Duffy*,
No. 25-CV-1413 (LJL), 2026 WL 588117 (S.D.N.Y. Mar. 3, 2026)...................................... 6, 8

*Montilla v. INS*,
926 F.2d 162 (2d Cir. 1991)............................................................................................9, 10

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)............................................................................................................2

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*,
598 F. Supp. 3d 98 (S.D.N.Y. 2022)...................................................................................2

*National Audubon Soc'y v. Hoffman*,
132 F.3d 7 (2d Cir. 1997)...................................................................................................2

*Peters v. National Railroad Passenger Corp.*,
966 F.2d 1483 (D.C. Cir. 1992) ..........................................................................................7

*Precision Med. Grp., LLC v. Blue Matter, LLC*,
No. 20 CIV. 2974 (PGG), 2025 WL 2695689 (S.D.N.Y. Sept. 22, 2025) ..................................4

*Safe Haven Home Care, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
130 F.4th 305 (2d Cir. 2025) ..............................................................................................2

*Saget v. Trump*,
375 F. Supp. 3d 280 (E.D.N.Y. 2019) .................................................................................2

*Taylor v. City of New York*,
269 F. Supp. 2d 68 (E.D.N.Y. 2003) ...................................................................................4

*Tummino v. Hamburg*,
936 F. Supp. 2d 162 (E.D.N.Y. 2013) ..............................................................................3, 4

*Weinstein v. Albright*,
261 F.3d 127 (2d Cir. 2001).................................................................................................3

*Weise v. U.S. Dep't of State*,
2026 WL 392433 (S.D.N.Y. Feb. 12, 2026).........................................................................6

**Statutes and Regulations**

22 C.F.R. § 51.60(a)(1)...................................................................................................1, 8
22 C.F.R. § 51.60(c)(2)...................................................................................................4, 8
22 C.F.R. § 51.70 .........................................................................................................8, 10

U.S. Const. amend. V..........................................................................................................9

Plaintiff Wolfgang Weise ("Plaintiff" or "Weise") respectfully submits this reply memorandum in opposition to Defendant's motion for summary judgment and in support of his cross-motion for summary judgment.

## INTRODUCTION

The State Department, by this point, has filed three briefs in this case. Not one has addressed—much less opposed—Plaintiff's requested remedy for the violation this Court already found on the revocation claim. That silence is a concession, and that's even more so in light of Plaintiff's request for vacatur and remand. *See* ECF No. 80 at 10-12.

On the denial claim, the Department defends its October 18, 2024 decision under a mandatory bar—22 C.F.R. § 51.60(a)(1)—that not one of its preceding notices ever mentioned. Not only that, but those notices (the Department now concedes) stated the wrong amount and pointed Plaintiff to the wrong office. ECF No. 79 at 9 n.8. And every notice that carried a payment due date and Plaintiff's right to internal review was mailed to a third-party office suite in Baltimore where Plaintiff has never lived, worked, or received mail.

Faced with all of this, the Department hangs its hat on the presumption of regularity. But that presumption requires a court to treat the Government's record as accurate. It does not require the Court to accept that the record establishes what the Department offers it to prove. On this record, neither the revocation nor denial can stand.

## ARGUMENT

### I. Record-Related Arguments

#### A. Scope of Review

As a preliminary matter, the Department argues that the Court's review is confined to the certified administrative record in *Weise I*, and that the Court may not consider any other

materials, including the record in *Weise II* and the evidence now before the Court. *See* ECF No. 81 at 1 n.1 (citing *National Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14-15 (2d Cir. 1997)). That is not the law, but either way, it does not make a difference.

In an APA case, the government agency is tasked with compiling the "whole" record; however, the whole record "is not necessarily those documents that the agency has compiled and submitted as 'the' administrative record. . . . Rather, [it] consists of all documents and materials directly or indirectly considered by agency decision-makers, including evidence contrary to the agency's position." *Saget v. Trump*, 375 F. Supp. 3d 280, 340–41 (E.D.N.Y. 2019) (quotation in original) (citation omitted) (cleaned up).

Nor is the general rule the be-all and end-all. Multiple recognized exceptions cut in Plaintiff's favor. *See Safe Haven Home Care, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 130 F.4th 305, 323-24 (2d Cir. 2025); e.g., *Calvary Hosp., Inc. v. Becerra*, 762 F. Supp. 3d 360, 372 (S.D.N.Y. 2025), objections overruled sub nom., 2025 WL 2106156 (S.D.N.Y. July 25, 2025); *see also Est. of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. 2008). For example, a court "may, in reviewing an agency decision under the APA, consider materials not included in the administrative record "to the limited extent that [the agency] is alleged to have 'entirely failed to consider an important aspect of the problem.'" *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 598 F. Supp. 3d 98, 106 (S.D.N.Y. 2022) (citing cases) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Alternatively, where a court is faced with a 12(b)(1) motion, as here, the Court "may consider evidence outside of the pleadings

to resolve the disputed jurisdictional fact issues." *See, e.g., Gonzalez v. Inn on the Hudson LLC*, No. 20-CV-9196 (EJ), 2022 WL 974384, at *2 (S.D.N.Y. Mar. 30, 2022).[1]

The Department's scope-of-record objection also proves too much. Agency staff presumably worked from the same materials in *Weise II* as in *Weise I*—the two records are contemporaneous. If "officials relied on analyses, directives, spreadsheets, or recommendations generated by other agencies, offices, or officials" in making the decision at issue here, "those materials fall squarely within the scope of the administrative record regardless of where they are housed." *Authors Guild v. Nat'l Endowment for the Humanities*, No. 25-CV-3657 (CM), 2025 WL 3678097, at *6 (S.D.N.Y. Dec. 18, 2025) (citing *Tummino v. Hamburg*, 936 F. Supp. 2d 162, 196–97 (E.D.N.Y. 2013)).

In any event, the Court need not resolve any of this, however, because the majority of Plaintiff's citations come from the *Weise I* record, and the *Weise II* citations only supply context and frame the allegations, but the Court need not rely on any them to rule in Plaintiff's favor.[2] All told, the premature denial, the unexplained regulatory switch, the deficient notice, and the failure to address Plaintiff's October 9 dispute are each established by the certified administrative record in *Weise I*, standing alone. The Court therefore need not decide whether the *Weise II* materials fall within an exception.

[1] The Court construed Plaintiff's complaint as raising two APA claims. Plaintiff, however, also raises constitutional claims, which further support consideration of evidence beyond the certified record.

[2] That is especially so given that Plaintiff's pro se complaint consisted of no more than a few handwritten pages. *See Cameron v. Garland*, 2026 WL 1707077, at *2 (S.D.N.Y. June 12, 2026) (pro se pleadings are construed liberally); *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001).

### B. Presumption of Regularity

The presumption of regularity cannot replace record evidence or reasoned decision-making. Plaintiff does not ask the Court to discredit the Department through speculation; he asks the Court to read the Department's own record. That record establishes that the Department repeatedly invoked § 51.60(c)(2) even though it now says it knew Plaintiff was in default, issued its final denial before its own deadline expired, and never addressed Plaintiff's October 9 dispute. The presumption cannot paper over irregularities, and it cannot supply findings the agency never made. What's more, the government is mistaken that Plaintiff presented "no evidence" disputing the note. The record contains Plaintiff's unambiguous denial that he obtained or agreed to the asserted loan. *See* CAR I at 61-63. The agency was not required to credit that denial. It was required to consider it before treating the letter as proof that Plaintiff simply refused to pay.

More to the point, the presumption of regularity "requires a court to treat the Government's record as accurate; it does *not* compel a determination that *the record establishes what it is offered to prove*." *Khalil v. Joyce*, 771 F. Supp. 3d 268, 284 n.5 (S.D.N.Y. 2025) (emphasis added). Apart from that, agency staff presumably used the same materials in *Weise II* as in *Weise I* to make their decision. *See, e.g., Authors Guild*, 2025 WL 3678097, at *6 (citing *Tummino v. Hamburg*, 936 F. Supp. 2d 162, 196–97 (E.D.N.Y. 2013)).

## II. <u>The Department Abandoned Plaintiff's Revocation Arguments</u>

Plaintiff's opening brief asked the Court to vacate the revocation and restore him to the position he occupied before it. *See* ECF No. 80 at 10-12. The Department's papers do not respond. A party that fails to oppose an argument on summary judgment abandons the point. *See, e.g., Precision Med. Grp., LLC v. Blue Matter, LLC*, No. 20 CIV. 2974 (PGG), 2025 WL

2695689, at *10 (S.D.N.Y. Sept. 22, 2025) (where party fails to oppose argument on summary judgment that operates as an abandonment of claim); *see also Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003).

Additionally, because the revoked passport expired on August 17, 2026, simply "returning" it is meaningless. And since remand would likely result in the same outcome, Plaintiff respectfully requests vacatur of the October 18 denial and, if the Court deems it appropriate, remand for lawful consideration of the debt.

## III. <u>The Department's Default Determination</u>

### A. The Department Now Defends the Denial on Reasons It Never Gave, and the Record Still Does Not Establish a Valid Demand

As a general rule, an agency "may elaborate later on [the] reason" for its decision, but it "may not provide new ones." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22 (2020).

Consider what the Department now says about Plaintiff's October 9 letter. Seizing on that letter, the Department concludes that it showed Plaintiff "did not intend to repay," so that waiting out the remaining 90-day period would have been pointless. The Department never made that finding before. It made no finding about the October 9 letter at all—it did not respond to the letter, and the denial notice does not mention it. A rationale the agency articulates for the first time in litigation cannot rescue a decision the agency made without it.

Separately, as mentioned, there is a threshold problem with the default determination itself. It is unclear when, if ever, Plaintiff went into default. See ECF No. 80 at 13-14. The promissory note ties Plaintiff's repayment obligation to the date of initial billing or demand. But the only notices carrying a due date and Plaintiff's right to review went to an ISS office that the

State Department itself selected. To that end, a deadline triggered by receipt of a notice Plaintiff never received cannot do the work the Department asks of it.

All things considered, the Department's proffered explanations sound nothing more than ex post rationales that are barred in APA actions. *See Hadwan v. U.S. Dep't of State*, 139 F.4th 209, 221 (2d Cir. 2025) ("judges generally must assess the lawfulness of an agency's action in light of the explanations the agency offered for it rather than any ex post rationales a court can devise") (cleaned up) (citing cases); *e.g., Metro. Transportation Auth. v. Duffy*, No. 25-CV-1413 (LJL), 2026 WL 588117, at *41 (S.D.N.Y. Mar. 3, 2026) (same); *see also Weise v. U.S. Dep't of State*, 2026 WL 392433, at *5 (S.D.N.Y. Feb. 12, 2026) (collecting cases).

### B. Even Assuming a Valid Contract, Every Notice That Mattered Went to the Wrong Address

As previously mentioned, the Department's loan-related notices and demands for payments were sent to an office suite in Baltimore, Maryland, and never reached Plaintiff. The record does not show the Department ever asked whether its demand reached him.

To begin with, the lack of any notice before a decision related to Plaintiff's passport presents a fundamental due process problem. *Cf. Lindsay v. New York Child Support OCSS*, No. 25-CV-2232 (LLS), 2026 WL 962464, at *6 (S.D.N.Y. Apr. 8, 2026) (before taking adverse passport-related decision, in cases involving more than $5,000 in child support arrears, government must "afford notice" and "opportunity to contest" as well as an "administrative complaint procedure"). After all, the only notices carrying the payment due date and Plaintiff's right to review (Sept. 27, Oct 30, Nov 29, 2023 letters) went to a third-party address (i.e., ISS).

The Department's own explanation makes the problem worse. By its admission, it re-issued those letters because of multiple changes of address in its system. See ECF No. 81 at 2. But an agency that knows its notice is not landing does not honor its obligation by mailing the

same notice again. The Supreme Court addressed similar circumstances in *Jones v. Flowers*, holding that a taxpayer's failure to comply with a statutory obligation to keep his address updated did not forfeit his right to constitutionally sufficient notice. 547 U.S. 220, 232 (2006).

Under *Jones*, although first-class mail generally suffices, "when the government becomes aware prior to the taking that its attempt at notice has failed," 547 U.S. at 227, it may not "simply ignore that information," *id*. at 237; it must "take additional reasonable steps to attempt to provide notice," *id*. at 225. Here the Department was well aware of the changes in Plaintiff's living situation and address. It took no additional steps. See, e.g., *Luessenhop v. Clinton Cnty., N.Y.*, 466 F.3d 259, 271-72 (2d Cir. 2006) (notice inadequate where plaintiff did not receive it, the government was aware it was not received, and it took no further practicable steps to ensure notice).

The Department's reliance on inapt cases and out-of-circuit authority does not change things. For instance, the Department invokes *Peters v. National Railroad Passenger Corp.*, 966 F.2d 1483 (D.C. Cir. 1992)—a Rule 23(c) class-notice case—for the proposition that omitting an apartment number and zip code can still satisfy due process. *See* ECF No. 81 at 7. But the notice in *Peters* went to the plaintiff's own apartment building; the only defect was the unit number. *See id*. at 1486 n.4 ("The claims form Peters submitted to Amtrak lists his apartment number as 31A" while a later affidavit "listed his apartment as 41E"); *id*. at 1486 ("We are not prepared to say as a matter of law that the omission of Peters' apartment number and zip code rendered the notices defective"). And the court excused the omission because there was no evidence that the defendant or its counsel had actual knowledge that the address was incomplete. *See id*. at 1486-87. Plaintiff, by contrast, did not live at the Baltimore address at all, and the Department knew its notices were not reaching him. *Hoffenberg* is off the mark for the same reason: the taxpayer there

regularly received mail at the address in question. *See Hoffenberg v. C.I.R.*, 905 F.2d 665, 665-66 (2d Cir. 1990) ("Petitioner admits that between 1982 and 1986 he resided at, received mail" at that address).

Put simply, the Department addressed its notices personally to Weise at a third-party commercial office where he did not reside, did not work, and did not receive mail—and then relied on his failure to respond to them.

## IV. Due Process/Regulatory Arguments

### A. The Unexplained Switch from § 51.60(c)(2) to § 51.60(a)(1)

WPC issued two letters on one basis and a third on another basis. No new facts emerged in the intervening time, and the Department never grapples with the mismatch.

The government says Plaintiff was not entitled to request a § 51.70 hearing based on the August 9 deficiency letter because it was not yet a denial. That misses the point. Plaintiff is not claiming any right based on the August letter. Rather, he's arguing that the switch in reasoning eliminated the hearing he would have received had the government remained under the initial provision (subsection (c)). Notably, the Department now contends that WPC knew Plaintiff was in default as early as January 3, 2024, when ARB confirmed his balance. See ECF No. 81 at 3; ECF No. 79 at 8. That contention only underscores the question: if the Department knew of the default in January 2024, why did WPC proceed under § 51.60(c)(2) for the next nine months, and why has it never explained the change?

"[T]aking an action based on a misunderstanding of the governing law is at the core of agency conduct prohibited under the APA." *Duffy*, 2026 WL 588117, at *41. "When an agency's initial explanation 'indicate[s] the determinative reason for the final action taken,' the agency may elaborate later on that reason (or reasons)." *Id.* (cleaned up) (citations omitted). "But the

agency can elaborate only on the reasons it actually had for the decision." *Id*. The Department cannot satisfy that standard, and its failure to explain the switch confirms that the denial was arbitrary and capricious.

Finally, Plaintiff wrote to WPC—the same office that had written to him and set the 90-day deadline, at the address WPC itself supplied—disputing whether any obligation existed in the first place. The Department gave him no chance to be heard on that dispute. That is a due process violation independent of the APA defects.

### B. *Accardi* and Due Process

For the same reasons, as explained previously, the passport revocation and application denial implicate *Accardi* as well as due process concerns under the Fifth Amendment.

Under *Accardi*, an agency must follow its own regulations, and a plaintiff need not show prejudice to obtain relief when it does not. *See Montilla v. INS*, 926 F.2d 162, 166-69 (2d Cir. 1991). The Department did not follow its own regulations here, and its response so far—that Plaintiff was not injured—is both legally irrelevant and factually wrong.

The Department ignored Plaintiff's October 9 submission. Plaintiff wrote to the WPC office that had written to him, at the address it provided. The Department now says the submission was untimely and misdirected. See ECF No. 81 at 5. Nine days later, on October 18, the Department denied the application—and it concedes that it did so only "after [Plaintiff] continued to refuse to repay the loan." ECF No. 79 at 15 n.10 (emphasis added). On that record, their logic goes, "Plaintiff cannot demonstrate that he suffered any harm." ECF No. 81 at 3. That fails three times over.

*First*, that framing inverts the burden. It puts the onus on Plaintiff to justify the Department's decision-making rather than requiring the agency to defend it. Plaintiff has also

suffered concrete harm: it has taken him nearly two years to vindicate his right to travel, among other things. *Compare Hizam v. Clinton*, 2012 WL 4220498, at *8 (S.D.N.Y. Sept. 20, 2012) (finding that the risk of "a year or more without the ability to travel abroad and see his family" constituted substantial harm). *Second*, no showing of prejudice is required when the Department violates its own regulations. See *Montilla*, 926 F.2d at 166-69. *Third*, the switch cost Plaintiff a § 51.70 hearing and the possibility of a limited-validity passport. That is harm enough.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Department's motion, grant Plaintiff's cross-motion, vacate the May 11, 2023 revocation and the October 18, 2024 denial, and remand with instructions that the Department (1) issue Plaintiff a passport of limited validity of approximately two years and (2) remove or correct any flags, notations, or other collateral consequences arising from the revocation and denial. In the alternative, because *Weise II* challenges the validity and enforceability of the underlying loan, the Court need not reach these questions if it determines in *Weise II* that the loan is legally invalid or unenforceable.

Dated: August 25, 2026 Respectfully,

*/s/ Sami Elamad*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1, I, Sami Elamad, hereby certify that the foregoing brief was prepared with Microsoft Word and contains 2,995 words, exclusive of the cover page, table of contents, table of authorities, and signature block, based on the software's word count function.

*/s/ Sami Elamad*